The third case we have today is they who say they who Seuss Nunez, the attorney general number 20-26 51. Mr Mosley and Miss Fitzgerald Simbu. Am I pronouncing that last name correctly? S. A. S. Yes, you got it. Thank you. Thank you. Just wanna make sure I didn't screw it up. All right, Mr Mosley, whenever you're ready, uh, man, please report. I'm Thomas Mosley, counsel for the petitioner. Mr Nunez, I'd like to reserve two minutes for rebuttal. You sure can. Now, uh, the court should reverse the nonpresidential single member board decision here. Uh, under this court's decision in Liao, there's something hang on. There's something in the background here. Somebody have Yeah, it's basically what we're having is a seven second lapse or something. Let's just we'll start all over again. Patrick, can you come back on? Yes, I'm here. Does he still have the YouTube running in the background? I do. I'm trying to. Yeah. Yeah, let's let's we'll start all over again. Once you get that taken care of, I'm on my phone. It's almost like I was talking to me again. Yeah. A possible suggestion is just for Mr Mosley to get off and come back on via zoom after getting rid of his YouTube. Yeah. Thomas, are you there? Were you able to shut off your YouTube? Yes. Okay, we'll start all over again. Patrick, you can just get rid of the what we did previously. The third case this morning is de Jesus Nunez, the attorney general number 20-26 51 Mr Mosley and Miss Fitzgerald Sambo. Mr Mosley, may it please the court. I'm Thomas Mosley, counsel for the petitioner. Mr Nunez. I'd like to reserve two minutes of rebuttal. Thank you. No problem at all. Uh, the court should reverse the single member nonpresidential board decision here under this court's decision in Liao because can I just can I just get some maybe at the house and just some facts out of the way is Mr de Jesus Nunez still in ice custody? He has your honor. He's currently detained at the Bergen County Jail. He's been there since September of 2019 in custody. And and it's correct. He only pled guilty to count to the child endangerment charge in the New Jersey State Court. Is that correct? Yes, that that is correct. Your honor. Just that one, just that one count under 24 C two a one and the alleged misconduct under count to was what sending a video was. Is that correct? That is correct, your honor. Um, well, of course, facts under debate and the categorical approach are not relevant to the inquiry here. Yeah, got it. He did send a salacious video. Was there a plea agreement for the New Jersey child endangerment offense? It was a negotiated plea, your honor. Yes, that's correct. I don't believe the agreement, however, is part of the record. I think that's the that was my next question. I couldn't find it in the record. Okay, thank you. Well, then you proceed. Uh, as I say, the case should be terminated. The decision should be reversed under this court's decision in Liao for essentially Mr. For cutting you off. But since you brought up Liao, I mean, isn't the Pennsylvania statute that was an issue in Liao different and materially different from the statute that we're looking at here? The Pennsylvania statute refers to knowingly endangers the welfare of a child by violating a duty of care, whereas the New Jersey statute says sexual conduct, which would impair or debauch the morals of the child. And it seems to me that there's a difference there. Can you? Can you speak to that? Well, I would well, Judge Noriega. Uh, my point, I think, is that the New Jersey excuse me, the Pennsylvania statute is actually stronger. And I was the Pennsylvania statute says, uh, in dangers in dangers the welfare. But the case law interpreting that statute mostly doesn't the Pennsylvania Statute says conduct that could threaten a child's welfare. No, the actual language of the statute, Judge Rep. Judge Restrepo says in dangers the welfare, but knowingly endangers by violating a duty of care, right? Give care and it had it right. Isn't that what the language is? Yes. But the language again, Judge Noriega, the language specifically says in dangers the welfare of a child. In other words, you have to look at the language of the statute. Then the case law interpreting that statute talks with respect to harm. And under and the case, the Pennsylvania case law mentioned in Liao is that the conduct could similarly here with respect to New Jersey statute with respect to the New Jersey statute, the case law interpreting that statute specifically the Hackett case, New Jersey Supreme Court case allows the statute to be violated. Uh, rather sets the standard with respect to harm as a capacity as a matter of plain language capacity. We submit is not the same thing as a particular likelihood. You brought up the Hackett case and the Hackett case does say, uh, note that the statute says would and that the issue is, um, a likely event. But but the Hackett case also discusses the predecessor statute, New Jersey statute to a 96-3 and noted that that statute had the language tends to debauch the child or impair its morals. And that that language was replaced in the current statute that we're talking about to say would. Isn't that a meaningful change? Uh, your honor, it's in terms. First of all, what is not will? What is not reasonable? Probability would I submit is not even is not even necessarily likely. But if you look at the hack, but Hackett in addressing what would means, Hackett said the word would single signals the futurity of a likely event, which is not required the events actual occurrence. But Hackett in looking at the word would said it signals a likely event. Isn't that different from just merely has the capacity to, as in layout that particular language is in the context of actual harm not being required. I submit that if you look at Hackett, the only language that we have from the New Jersey courts as to what would means, but that's your honor. I submit if you look at the very first page of the Hackett decision, it says we hold that based on the testimony offered, a jury could conclude beyond a reasonable doubt that the defendant's conduct had the capacity capacity to impair. Similarly, if you look at, uh, and the references to page 426 on the West law, Hackett talks in terms of the, uh, in this case, the burden shifts to the from the mental state to a potential effect that such conduct may have may have on the morals of a child. So we're talking about something here that is certainly not will certainly not a reasonable probability in terms in terms of, uh, in terms, uh, of, of, of, of harm occurring. We are talking, it also says very clearly the question and Hackett was looking at actual harm versus likelihood of harm and said, the question is not whether the victims of the alleged endangering actually had their morals impaired. The question is whether the actor's sexual conduct was conduct that likely would impair or debauch the morals of a child in the community. That's what the question is. And isn't that then the capacity, but they, from the very beginning of this decision, it talks about capacity and it talks about potential effect and the subsequent decision reported decision in Bryant interpreting that and giving the, the, the prosecution's V makes clear that it's only capacity. Similarly, the most recent reported New Jersey Supreme Court McLean, which we cite in our brief talks in terms of capacity. Now I think it's, I understand your honors reading of this, but, but I think we have a situation in which at the very least, and I, I think it's just capacity, but even if it's something in between, we have to, we have to draw a line here, uh, with respect to what particular likelihood we're talking about, what the definition of particular likelihood. Uh, and in that we have at the extreme, uh, where the, in the, in the, uh, SORM matter of SORM case, we have something that, uh, we have a statute where it's clear, reasonable probability of harm in, in Fregoso. Uh, we have from the ninth circuit, uh, we have may, I would submit that at the very least when a New Jersey, when a that the, that the interpretation of the statute is ambiguous, that it, that for the severe penalty of deportation to be visited upon somebody, to be visited upon somebody, we have to draw the line. We, we should, we should draw the line and require conviction under the state statute to unambiguously, which I submitted does not here do, uh, unambiguously require, uh, a particular likelihood of harm. And if you read the New Jersey case law, if you read them, even if you read Hackett is ambiguous on that point, which I don't think you should, if you read Hackett is ambiguous on that point, we haven't crossed the line to show a particular likelihood, but that's what particular likelihood I submit is just one element of this. The other element is there have, there has to be a particular likelihood of harm and the New Jersey portion of the New Jersey statute, which is convicted, separates harm, uh, out. In other words, you take a look at 2C24-4A1, it talks, it talks in terms of any other person who engages in conduct or who causes harm as described in this paragraph. Well, he was convicted only under the conduct provision of that statute, not causes harm. In other words, New Jersey separates out, New Jersey separates out harm, uh, from, uh, the provision of the endangering statute under which he was convicted. So even if I lose on particular likelihood, which I do not think that I should, but even if I lose under particular likelihood of harm, I never, I would nevertheless submit that I should win on the fact that the New Jersey statute under which he was convicted does not, does not require harm. Uh, it's, it's, it's, it's, it's seg, it's segregated out. And again, what does the New Jersey statute require then Mr. Mosley? Oh, it's, it, it distinguishes between impairing or debauching the morals of a child, uh, impairing or debauching, but then it talks, and a child, by the way, this could be someone 17 years and 11 months old. And it, uh, so is it your position that that is not harm? My position is that the New Jersey statute is that the New Jersey statute distinguishes these two categories and the position, excuse me, the portion judge Restrepo under which my client was convicted was not, uh, was not the harm provision. And that, that's the distinction here. Liao says you have to have a particular likelihood of particular likelihood of harm. Even if I've lost on, on particular likelihood, which I don't think I have or should, uh, nevertheless, we, we have harm that is harm that is required, but, but if I can, but you don't need, but you don't need actual harm. You need a particular likelihood of harm, right? Right. And the statute, we're not, we're not talking, absolutely. We're not talking about, uh, we're not talking even a particular likelihood of harm here because harm, uh, isn't part of the provision of the statute under which he was convicted. As you, any other person who engages in conduct, we're talking about sexual conduct or who causes harm as described in this paragraph is paragraph. But who engages in that conduct and that conduct is conduct that would impair or debauch the morals of a child. Right. But the New Jersey, so it gets back to the same conduct that we're talking about. It's the conduct. His conduct is conduct that would, or has the probable likelihood of causing, um, impairing or debauching the morals of a child. And that is harm, right? Mr. Mosley, that is harm. Not according, not according to the new church, how New Jersey defined defines the statute. I mean, this statute, for example, take the facts of Hackett can be violated by someone standing naked in front of his naked in front of his window and an 18 year old boy who stands naked in front of his window. Uh, whereas a girl who is 17 and 11 months passes violates, violates the statute. So the New Jersey statute. I'm sorry. You don't think that's ending in your window naked causes harm. I, what I'm, what I'm, what I'm saying, Judge Noriega, is that, uh, is that New Jersey makes a distinction here and, and New Jersey makes a distinction between debauching the morals and, and harm. And that's not the provision under which he was convicted. But if I can just getting back to particular likelihood, we do not have here a situation in which there's a requirement that you prove a reasonable probability of harm. That's, that's, that's the, that's a matter of sorrow. We have something that I would submit is at most ambiguous into what you must prove. I mean, Bryant, Bryant and McLean all say capacity and capacities, simply not as a matter of plain English. Well, wait, let's, let's just be clear. I mean, McLean was talking about a different statute. There was no, there was no analysis of the statute we're talking about. What McLean has is a site to hack it with a parenthetical, right? It has, it has a discussion of hack it, but it is nevertheless, even if it's considered it's, it's, it's a citation to hack it with a parenthetical, right? It's a citation to hack it with a parenthetical, but it is dicta from the New Jersey Supreme Court. And, and Brian, in, in terms of looking at a different statute was McLean. And then Brian, Brian wasn't focused on whether a defendant actually, that was focused on whether a defendant actually needs to know that his conduct would impair or debauch the morals. And that was, so that case was not really on the meaning of the statute. It was more focused on the knowledge of the defendant in the case, right? But it, but it, but it summarized the requirements for conviction under, again, a precedential decision, the requirements for conviction, and it limited it, it limited it to capacity. And Brian, but Brian was not a New Jersey Supreme Court case. No, it was an appellate division decision, which certainly has precedent, certainly has precedential value. If you look though, if you look though at hack it, hack it repeatedly goes, repeatedly, excuse me, repeatedly says, repeatedly says, capacity, even, even, even if I were to concede that hack it may be considered ambiguous on this point, we do not have a clear line. We do not have a clear line where you have anything approaching that has to be a reasonable probability, which is, which is where the, the, the Board of Immigration Appeals has found that a statute has found that a statute meets the test of a particular likelihood of harm under the circumstances. Why don't we hear from the opposing counsel and we'll get you back on rebuttal. Thank you. Ms. Fitzgerald-Sambu. Sure. Good morning, Your Honors. May it please the court. Elizabeth Fitzgerald-Sambu on behalf of Respondent Attorney General. Can you just help me in connection with the statute here? He was convicted under A-1, is that correct? Yes, correct, Your Honor. And so, and that says who engages in sexual conduct, which would impair or debauch the morals of a child. A-2, which he wasn't convicted under says any person having a legal duty for care of a child who has assumed or, or who has assumed responsibility, who causes the child harm. Is there some difference between the harm that's, is there harm under A-1? A-2 says, specifically says harm. A-1 says would impair or debauch the morals of a child. Is there a difference between those two? Yes, Your Honor. I believe so. But the difference is, is as the, or sorry, let me see. Are you reading, sorry, could you say the cause harm part that you're looking at is A-2? Yeah, I'm just looking at A-1 and A-2. And A-2 specifically says harm. Is that different than A-1 or is, should we just understand that impairing or debauching the morals of a child is without saying at harm? Right. I believe that this court should assume that impairing or debauching the morals of the child is harm. And I think the Hackett case explains all of this well. So the reason why. I have a problem with the Hackett case. I'll be honest, I have no idea what they're talking about at times. They said that's holding, at least that was told in law school. The holding is the, the thing that is the decision that comes out. There's the law that sets the precedent for that particular court. We hold that based on the testimony offered, a jury could conclude beyond a reasonable doubt that Hackett's conduct had the capacity to impair or debauch. And then just the, and then a couple of pages, a few pages later talks about potential effect that it may have on the morals of the child. And then it goes into on page four 28, two pages after the last comment. We do not view the alleged altered statutory language, which would impair or debauch the morals of a child is heightening the proof required of the element proof of the actual impairing or debauching is not required. And then it goes, the word would signals the future. It futurity of a likely event, which I have. I mean, that's not even Vicar Stinney. And I'd have no idea what that means. I mean, it sounds like maybe reasonable likelihood. Uh, so can you tell me what Hackett, I mean, it's internally inconsistent and I have a holding, I have something else that looks like it might be a what am I wrong? Um, we don't feel those phrases or those parts of the decision as inconsistent. I think when Hackett is understood in context, what they're holding is saying is that for the statute petitioner statute of conviction, the harm or the impairing or debauching the morals harm relates to an average child in the community. So that the, uh, Supreme court of New Jersey makes very clear in the Hackett decision. And that's part of the holding is that the, the harming of the morals is not related to the actual victim at issue. That's not the inquiry to convict. The inquiry is related to an average child in that community. So that's why, that's why the court sort of explains in passing and using the phrase tends to, or has the capacity to, because it's referencing that average child in the community and not whether there actually was that harming of the morals of the actual victim in the specific case. So I think that's why the New Jersey courts have used that language in general. Um, and another part of Hackett is that they were, um, explaining the difference between the prior version of the statute, which used the phrase tends to, then the legislature changed it to would. Um, and so here we have, um, what we view as a holding saying that those two are the change in statutory language, although it appears significant, both of those phrases signal a likely event. So here you have the language saying the futility of a likely event that's meaning in reference to the average child in the community, therefore the statute requires a likelihood that an average child in the community would have their, uh, morals harmed. Um, so that's how we view the Hackett case. We believe that's all incorporated into the holding and when I'm properly understood in context, that's what they were saying. If you're, if you're writing opinion, at least I understand, as I understand the craft, when you say we hold, what follows is you're holding. And then five pages later, it looks like it could be, they're trying to in effect give the analogy to what is an interpretation legislative history, if you will, even though this is an opinion as to how they would go about looking at what the word would means. And I'm, I just get lost. Well, you're under, I mean, this court should assume that the Supreme court was bound by the New Jersey legislature's language. So here the Supreme court of New Jersey was bound to interpret the term would, because that's the term that's used in the statute. So to sort of take petitioner's interpretation, he's arguing that, Oh, sort of in this Hackett decision, the Supreme court of New Jersey was saying that would actually means sort of this capacity to something that's less. Um, but here that's not what they did. They said that would means the same thing as the prior tends to language. And then because it relates to the average child in the community, that's why the court sort of as shorthand says has a capacity to, or tends to, because there was confusion, particularly in this case about whether the harm to the morals has to relate to the actual victim or to the average child in the community. So the, the holding of Hackett is focused on saying that the harm has to be to the average child in the community. So that's why it sort of uses that other language capacity to, to clarify that, even though the statute says would, which implies that the morals of the actual victim had to be harmed. Wouldn't it be more in your favor? If the holding said the following, we hold that based on the testimony offered a jury would conclude beyond a reasonable doubt that Hackett's conduct impaired or debauch the morals of a minor. Well, that would match the statutory text, but I think the reason why the court used the language it did is because the whole entire holding was clarifying that it's not the actual victim. So, although I guess that would have been an easier plug for us to pull out and cite when Hackett is properly understood in context, it's very clear that the reason why they use that capacity to language is because of the holdings that the focus is on an average child in the community and not the actual victim, which is the court just uses would it's ambiguous slightly. Right. And in Hackett, they are saying you don't have to show that the actual child who was the victim was harmed, right? That's what's going on. You don't have to show actual harm of this particular victim. You have to show that the conduct at issue here would likely impair or debauch the morals of the average child in the community, right? Correct. Your honor. And that was actually the litigation in Hackett. So that's why the court was clarifying that issue of what exactly would means because there was confusion about that issue. So that's, I think why we have the court using that general capacity to, or tends to language just to sort of clarify that point, which then later courts like Bryant pulled out and cite or McLean. But even in the Bryant case, which is a lower court, New Jersey case there, they also cite the likely language. So in that Bryant decision, they say that, you know, the term would means it refers to a likely event. So here petitioner is trying to say that that's that Bryant shows that somehow the harm is not likely, but the Bryant actually used the phrase likely that it pulled from the Hackett decision. Now we run into the comparison between the New Jersey statute and what federal law requires under the categorical approach. In other words, there has to be a match. Correct. Your honor. In Lao, we said, we clarify, supposedly clarified that to qualify as a crime of child abuse under the INA state child endangerment offense must require that the actor's conduct create a particular likelihood of harm to the child that rises above conduct that creates only the bare potential for non-serious harm. And my problem is when I look at that holding in Hackett, it talks about in effect, the potential for non-serious harm. And we all require something more than that. That's why I'm having a problem with the categorical approach, which we have to apply here. Well, your honor, I think the issue then is, you know, whether impairing or debauching the morals of a child or a likelihood of that is actually harm. And so then this goes back to whether the statute of conviction categorically matches the board's definition of the phrase in the INA child abuse, child neglect, or child abandonment. So this court has already deferred to the board's definition. And in that definition, even a matter of Mendoza Osorio, the board also uses the bare potential language, I believe. And there they explicitly include the types of conduct that are at issue here. So this goes again, how do you distinguish Liao for me in the conduct, in the context of this case? Right. So Liao involved the likelihood of harm for a Pennsylvania statute. And there the Pennsylvania statute used the terms could threaten the child's welfare. And even the board has held in matter of Mendoza Osorio, that some child endangerment statutes, like the one in the Pennsylvania case in Liao, don't meet the board's definition of child abuse, child neglect, or child abandonment. Because the likelihood of harm is to there, basically there isn't a likelihood of harm. So there, the Pennsylvania statute used the term welfare. It explicitly said could threaten. But here you have the term would in the New Jersey statute. And you have New Jersey precedent from their highest court of the Supreme court, holding that that requires a likelihood of injury to the average child's morals. So there, that's why in our view, there is a categorical match as far as the likelihood of harm. And the state statute, if I just go by the holding in Hackett, covers conduct that could have the capacity to in effect, to watch the morals of a child. And I'll assume for the moment that that's harm in Liao. We say that the federal statute requires a particular likelihood of harm. And that a state statute, which covers conduct that could threaten a child is not a categorical fit. And what I'm saying is that's my problem. How do I get over that? Right. Well, I think a major part of it is that in Liao, it also involves welfare. So it didn't in New Jersey, in the New Jersey statute, the harm is specified. It impairs or blushes the morals of a child. In Liao, the Pennsylvania statute just said, use the term welfare, which, you know, that's sort of the New Jersey statute, as I understand it. 22 C 24 dash four is entitled endangering the welfare of children. Right. But each state has different statutory crimes as far as what child endangerment actually includes. And that's why in matter of Mendoza Osorio, the board stated that sometimes some states will have child endangerment statutes that cover conduct that meets the child abuse, neglect or abandonment definition and others that don't. So in Pennsylvania, it's very ambiguous. It captures a lot of conduct where prosecutors could sort of argue that anything is encompassed within the welfare issue, but here it's tied to the New Jersey statute says impairing or debauching a child's morals. And then you have the board defining the phrase child abuse, child abandonment or child, excuse me, neglect or abandonment as including harming a child's morals. It includes both sexual conduct and harming morals. So that's why it categorically matches the board's definition of that statutory phrase. Whereas in Liao, child's welfare would have had to fit within the board's definition of child abuse, child neglect, or child abandonment. And in that case, welfare was so open-ended that it didn't match the board's definition. So going back to the New Jersey interpretation of this statute, if you, do you, with, if you didn't have an Hackett or if you were without the language and Hackett describing the word would on page four 28 or whatever, what is for as meaning the futurity of a likely event, whatever that means. And all you're left with is the holding on page four 23, when you lose them, wouldn't this fit right under Liao? Well, I don't think so, your honor, because you still have the term would, um, whereas in Liao you have this, the statutory phrase may threaten. I get it. And if the easy way out for the court, and if you were drafting this for the court, it was just say would means would cut it out, but they, that they have a would, in effect, we hold that based on the testimony that could conclude something had the capacity of impairing or debauching the morals of a child. And that falls into a trap and makes this case very much like Liao. And the trouble in Hackett is you then have language after the holding that appears to take a different tack. I'm saying if you don't have that extra language, doesn't this case fit right within Liao, unfortunately, and become not a fit under the categorical approach. Well, your honor, we disagree. Um, and I think the reason why you got to give me a reason why you disagree. Yeah, I am. Um, the reason why I think the key is because in the New Jersey statute, it relates to an average child in the community. So there they're saying it would harm that average child. So the prosecutor has to actually prove that the average child would actually be harmed. It's just that because it's an average child, it's all sort of, um, theoretical versus proving that like the actual victim in this case would be harmed. So what is still a definitive term? That's essentially what the Hackett case held is that, you know, would still means would, but it just relates to this sort of theoretical average child. So that's, I think the key distinction here. Um, whereas in Liao, there wasn't sort of that, that hook, it was just could threaten, and then the term welfare, it was much more open-ended than here. The New Jersey statute saying there is going to be harm. It's just that you analyze the average child. Yeah. Briefly, does it, does it matter that the statute specifically references sexual conduct? Do we, do we bake that into the equation or not? Well, your honor. So that's the conduct that has to be shown. And then the impact is sort of the impairing or debauching the morals, but here, um, it doesn't really make a difference because the board's definition of child abuse, neglect, or abandonment encompasses both sexual conduct and harming the morals of a child. So, you know, both aspects of the New Jersey statute fall into, or categorically match the board's definition of child abuse, neglect, and abandonment. So to us, that's sort of a non-issue. Um, the harm definitely is included within the board's definition and this court has already deferred to that. So it doesn't matter that this here was an unpublished single member decision as petitioner argues. Thank you. Is the fact that the New Jersey statute mentioned sexual conduct specifically relevant to us in trying to distinguish the statute that was at issue in Liao? Um, I don't think so, your honor. Um, Liao was a child endangerment crime, I guess here. So petitioner is arguing that for the third degree, that because the statute uses the phrase, or the conduct or causes harm, um, that there's sort of these two types of conduct, but I mean, that's not necessarily how the New Jersey court has interpreted this statute, um, and either way, both the conduct and the child endangerment impairing morals aspect of it meet the board's definition. So I think Liao was more focused on sort of this classic, um, likelihood of harm, child endangerment context where the sexual conduct, if anything is stronger than, you know, sort of the impairing morals and generic type of child endangerment crime, if that makes sense, thank you very much. Thank you. Any further questions? Okay. Thank you. We'll go back to Mr. Mosley on rebuttal. Just very briefly on rebuttal, uh, capacity in respect to the government's argument about the theoretical or the hypothetical child capacity in terms of achieving the goal of the statute makes much more sense because it lessens the prosecution's burden in that regard. Uh, and focuses more generically upon what could or could, what could happen. So I would submit that capacity, which is introduced as the holding of it as the holding of the case is really what the court, uh, was focusing upon under, under these circumstances. Uh, and that, uh, should, that certainly should be dispositive here. Finally, getting back, if Hackett is viewed as inconsistent, I think in drawing the line, and this is the line the court should draw is that the unequivocally require a particular likelihood, which I do not think. Uh, even reading Hackett, which I would submit even reading Hackett, uh, as, as ambiguous, uh, uh, does that. So under these circumstances, I would submit the case is governed by Liao and, uh, it should be the finding of removability should be reversed. Thank you very much. Uh, any questions from my colleague? None. No, thank you. Thank you. Thank you to both counsel for very well presented arguments and, uh, and also well done briefs. I would ask that a transcript be prepared to this oral argument and, uh, and, and split the costs if you would, please. Again, thank you for being with us. It's a, it's a pleasure having both of you. Thank you. Thank you.